IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE STAND 'N SEAL, PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1804 ALL CASES <br><br> 1:07 MD1804-TWT |

ORDER

This is an MDL proceeding in which about 200 personal injury actions are consolidated for pretrial proceedings. It is before the Court on the Defendant Ortec, Inc.'s Motion for Summary Judgment on All Plaintiffs' Claims Against Ortec, Inc. [Doc. 1814]. For the reasons set forth below, Ortec's motion is GRANTED as to the Plaintiffs' claims against Ortec in Flynn v. Roanoke Companies Group, Inc., No. 1:06-CV-1809, and Adams v. Roanoke Companies Group, Inc., No. 1:07-CV-0686.

I. Background

This MDL proceeding arises out of lawsuits filed by users of Stand 'n Seal "Spray-On" Grout Sealer. Stand 'n Seal is a consumer product used to seal ceramic tile grout in kitchens, bathrooms, and similar areas. The purported advantage of Stand 'n Seal is that users can easily stand and spray the sealant onto the grout without the strain of using a brush and manually applying the sealant. The Plaintiffs say that the

problems with Stand 'n Seal began when the manufacturer changed its chemical components. Stand 'n Seal was originally manufactured with a fluoropolymer chemical known as Zonyl 225.[1] But from April to May 2005, and again in July 2005, the manufacturer of Stand 'n Seal switched from Zonyl to a different fluoropolymer chemical known as Flexipel S-22WS. The Plaintiffs say that users of Stand 'n Seal immediately began experiencing respiratory problems, such as chemical pneumonitis, from exposure to Stand 'n Seal. By August 31, 2005, Stand 'n Seal with Flexipel was recalled.

As a result of their injuries, consumers all over the country filed lawsuits asserting various claims against each of the companies involved in the manufacture, distribution, and sale of Stand 'n Seal with Flexipel. On January 5, 2007, the Judicial Panel on Multidistrict Litigation transferred the federal lawsuits to this Court for consolidated pretrial proceedings. One of the Defendants in these lawsuits is Ortec, Inc. It describes itself as a chemical services company that mass produces the chemical products of other companies. (Ortec, Inc.'s Statement of Undisputed Material Facts ¶ 4.) One of those companies, and also another Defendant in these

---

[1] Fluoropolymers are known for exceptional chemical resistance and high-temperature stability. The most commonly known fluoropolymer is probably the DuPont brand Teflon. Teflon is used in hundreds of products, including coating of non-stick frying pans.

lawsuits, is Innovative Chemical Technologies, Inc. (ICT). (Id. ¶ 5.) ICT developed Flexipel, which it hired Ortec to produce. (Id. ¶ 8.) Under its contract with Ortec, ICT provided Ortec with all of the specifications, raw materials, batch sheets, production orders, and shipping instructions for producing Flexipel. (Id.)

The Plaintiffs have asserted claims for strict products liability and negligence against Ortec which now moves for summary judgment on these claims. Ortec says that it is entitled to summary judgment on the strict products liability claims because Ortec is a product seller of Flexipel, not a manufacturer. Ortec says that it is also entitled to summary judgment on the negligence claims because it used reasonable care and skill in producing Flexipel. Although Ortec's motion seeks summary judgment in all cases originally filed in Georgia, both sides agree that, at this point, the Court should only decide Ortec's motion as to the Plaintiffs' claims in Flynn and Adams. Both sides also agree that Georgia law should apply to the Plaintiffs' claims in Flynn and Adams.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light

most favorable to the non movant. Adickes v. S.H. Kress and Co., 398 U.S. 144, 158-159 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

### A. Strict Products Liability

Georgia law provides by statute for claims against manufacturers under the theory of strict products liability. The statute provides:

> The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

O.C.G.A. § 51-1-11. But "a product seller is not a manufacturer as provided in Code Section 51-1-11 and is not liable as such." O.C.G.A. § 51-1-11.1(b). A product seller is defined as:

> [A] person who, in the course of a business conducted for the purpose leases or sells and distributes; installs; prepares; blends; packages; labels; markets; or assembles pursuant to a manufacturer's plan, intention, design, specifications, or formulation; or repairs; maintains; or otherwise

> is involved in placing a product in the stream of commerce. This definition does not include a manufacturer which, because of certain activities, may additionally be included within all or a portion of the definition of a product seller.

O.C.G.A § 51-1-11.1(a). Based on these statutory provisions, Georgia courts have held that "strict liability applies only to those actively involved in the design, specifications, or formulation of a defective final product or of a defective component part which failed during use of a product and caused injury." Davenport v. Cummins Alabama, Inc., 284 Ga. App. 666, 671 (2007); see also Boyce v. Gregory Poole Equip. Co., 269 Ga. App. 891 (2004).

The evidence shows that Ortec is a product seller of Flexipel, not a manufacturer. Although Ortec mixed the raw materials that produced Flexipel, it was not actively involved in the design, specifications, or formulation of Flexipel. Under its contract with Ortec, ICT provided Ortec with all of the specifications, raw materials, batch sheets, production orders, and shipping instructions for producing Flexipel. (Ortec, Inc.'s Statement of Undisputed Material Facts ¶ 9.) Ortec followed ICT's "exact formula and process directions" for Flexipel and "never made any suggestions to ICT on how to improve the process or the product." (Brotherton Dep. at 32.) Indeed, Ortec prides itself on following its customer's instructions "absolutely to the letter." (Id., at 31.)

The Plaintiffs say that it is "undisputed" that Ortec manufactured Flexipel.

They cite to the deposition testimony of Jeffrey Alender, the President of ICT, and Larry Brotherton, the President of Ortec, to support their argument. But the testimony from these depositions actually supports Ortec and shows that Ortec was not actively involved in the design, specifications, or formulation of Flexipel. Alender repeatedly said that Ortec produced Flexipel according to ICT's directions:

> Q. (By Mr. Gibson) Is there anyone at Ortec that's responsible for monitoring the specification compliance of Flexipel S-22WS?
> A. Ortec has a – Ortec has a batch sheet which I supply to them and on the batch sheet it tells them what the specifications are and they – at my instruction, they produce the product to these specifications.

(Alender Dep. at 28.)

> Q. If I understand it correctly, the materials that were manufactured by Ortec were to specification; is that correct?
> A. That is correct.
>    Mr. Huray: Object to the form of the question.
> Q. (By Mr. Parnell) I'll withdraw the question and ask again. Tell us what you know about the materials that were made at your request by Ortec in terms of whether they complied with your directions.
> A. They did, and they were in spec.

(Id., at 96-97.) The same is true for Brotherton:

> Q. And describe for me, if you would, what Ortec does.
> A. We are a manufacturing service company. We provide our equipment to others and manufacture products under confidentiality agreements that they provide technical information for and we – that's what we do.

(Brotherton Dep. at 9-10.)

> Q. Ortec, I think we've read in your Web site, it's a contract

>    manufacturing company, right?
>    A. Yes.
>    Q. You get processes and raw materials that other companies design, you mix their stuff together, and you send it where they tell you to.
>    A. That's correct.

(Id., at 30.) The Plaintiffs have not presented any evidence to show that Ortec is a manufacturer of Flexipel subject strict liability. Therefore, Ortec is entitled to summary judgment as to the strict products liability claims in Flynn and Adams.

### B. Negligence

In products liability cases, Georgia courts have defined negligence as "whether the maker of an article for sale or use by others has used reasonable care and skill in designing it so that it is reasonably safe for the purposes for which it is intended, and for other uses which are foreseeably probable." Hall v. Scott USA, Ltd., 198 Ga. App. 197, 201 (1990) (internal quotation marks omitted). The evidence shows that Ortec used reasonable care and skill in producing Flexipel. The product was not defective at the time or in the form that it left Ortec. It followed ICT's directions exactly and produced batches of Flexipel in liquid form ready to be shipped in drum containers. (Ortec, Inc.'s Statement of Undisputed Material Facts ¶ 20.) There is no indication that this process was defective or that producing Flexipel in liquid form created any hazard. Even the Plaintiffs' experts agree:

>    Q. And so when you say too hazardous, it's the introduction of the ingredient, Flexipel, that makes it too hazardous, this is, the toxicity,

correct?
A. No, I don't agree with that. It's not the Flexipel. It's the manner in which it is applied or recommended to be dispensed as an aerosol, as a mist.

(Wabeke Dep. at 55.)

The Plaintiffs say that Ortec should have known that Flexipel would later be aerosolized. They cite to the deposition testimony of Jeffrey Alender, the President of ICT, to support their argument. But the testimony from Alender's deposition actually supports Ortec and shows that Ortec did not have any knowledge about how Flexipel would be used:

> Q. Okay. Did you ever advise anyone at Ortec of the intended use as you understand it or understood it at the time or intended application of the Flexipel S-22WS?
> . . . .
> A. No.
> Q. Do you know if anyone at ICT ever had that conversation with anyone at Ortec where it was disclosed to Ortec what ICT understood would be the intended application or the intended use of the product that was shipped to Aerofil [Technology, Inc.]?
> A. No.
> Q. Did you ever advise or discuss with anyone at Ortec your understanding as to whether or not the Flexipel 22 that was shipped to Aerofil would be aerosolized?
> A. No.
> Q. Did anyone at ICT to your knowledge ever have that conversation with anyone at Ortec?
> A. No.
> Q. Do you know if anyone at ICT ever mentioned Stand 'N Seal as a product to anyone at Ortec before these lawsuits were filed?
> A. No.

(Alender Dep. at 89-90.) Moreover, there was little reason for Ortec to believe that Flexipel would be aerosolized. ICT provided Ortec with a Material Safety Data Sheet to include with the shipments of Flexipel, and this document stated that Flexipel should not be aerosolized. (Id. at 83.) The Plaintiffs have not presented any evidence that Ortec should have known that Flexipel would be aerosolized. Therefore, Ortec is entitled to summary judgment on the negligence claims in Flynn and Adams.

## IV. Conclusion

For the reasons set forth above, the Defendant Ortec, Inc.'s Motion for Summary Judgment on All Plaintiffs' Claims Against Ortec, Inc. [Doc. 1814] is GRANTED as to the Plaintiffs' claims against Ortec in Flynn and Adams.

SO ORDERED, this 24 day of June, 2009.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge